# IN THE UNITED STATES DISTRICT COURT
## NORTHISN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| ALBERTO DOUGLAS SANCHEZ, | CASE NO. 1:20-CV-01536-PAG |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. |  |

## INTRODUCTION

Plaintiff Alberto Douglas Sanchez ("Mr. Sanchez") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB"). (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to a magistrate judge for preparation of a report and recommendation pursuant to Local Rule 72.2, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend the Court **REVERSE** and **REMAND** the Commissioner's decision.

PROCEDURAL BACKGROUND

Mr. Sanchez filed for DIB on October 31, 2015, alleging a disability onset date of May 14, 2011.[1] (Tr. 119). His claims were denied initially and upon reconsideration. (Tr. 118-38). He then requested a hearing before an administrative law judge. (Tr. 172-73). Mr. Sanchez (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on October 12, 2017. (Tr. 37-77).

On February 28, 2018, the ALJ found Mr. Sanchez not disabled in a written decision. (Tr. 140-50). Mr. Sanchez requested review. On review, the Appeals Council vacated the hearing decision and remanded to the ALJ. (Tr. 154-58). The Appeals Council ordered the ALJ give further consideration to three issues: (1) whether Mr. Sanchez has medically determinable impairments that are severe at Step Two of the sequential evaluation process; (2) Mr. Sanchez's maximum residual functional capacity ("RFC") during the entire period at issue and provide a rationale with specific references to evidence of record in support of the assessed limitations; and (3) whether Mr. Sanchez has past relevant work and, if so, can perform it either as actually or generally performed given his RFC. (Tr. 157).

The ALJ held a second hearing on April 9, 2019. (Tr. 79-117). On May 30, 2019, the ALJ issued a written decision, again finding Mr. Sanchez not disabled. (Tr. 7-19). On May 13, 2020, the Appeals Council denied Mr. Sanchez's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6). *See* 20 C.F.R. §§ 404.955 & 404.981.

Mr. Sanchez timely filed this action on July 10, 2020. (ECF #1).

---

[1] On his DIB application, Mr. Sanchez indicated a disability onset date of October 24, 2012. (*See* Tr. 317). However, the ALJ's decision and the disability determination exhibits all reference a disability onset date of May 14, 2011. (*See* Tr. 10-11, 119, 128-29).

FACTUAL BACKGROUND

## I.   ADMINISTRATIVE HEARING

Mr. Sanchez, represented by counsel, appeared at an administrative hearing before the ALJ on April 9, 2019. (Tr. 79-117). In his opening statement, Mr. Sanchez's attorney contested Mr. Sanchez's capability to perform his previous job as a hand packager as actually or generally performed. (Tr. 86-88). The hand packager position had previously been assessed as a "light" exertional level, but counsel asserted that Mr. Sanchez had previously testified to frequent lifting and carrying of up to 50 pounds in this position. (Tr. 87-88). Mr. Sanchez had an established degenerative joint disease in his knees at the time of the previous hearing and was unable to perform his past work as a hand packager; as such, Mr. Sanchez would be unable to perform the demands of medium work this past work entailed. (Tr. 88-89).

Mr. Sanchez then testified. He stated he did not do much to help his wife around the house, but he would occasionally sweep. (Tr. 90). He had done yard work and shoveled snow "a long time ago." (Tr. 91). He was no longer able to drive due to vision issues. (Tr. 92). He did not use mass public transportation to get around, but his wife would call the transportation department that provided rides. (*Id.*). Mr. Sanchez is unable to use a computer, but does use a cell phone to receive calls from his family. (Tr. 93). Mr. Sanchez testified he did not graduate from high school, and had only attended school through the ninth or eleventh grade ("something like that"). (Tr. 107).

Mr. Sanchez had previously worked at Manno Landscaping. (Tr. 94-95). In this position, Mr. Sanchez primarily worked to clean the yard of debris and branches. (Tr. 95-96). He also shoveled snow in the winter. (Tr. 98). He testified he was unable to use a weed whacker and did

3

not edge the lawns. (Tr. 95-96). Mr. Sanchez's testimony was unclear as to whether he was able to

use a mower. The ALJ asked him: "Were you on a riding mower or were you walking?" Mr.

Sanchez responded: "No, it was by somebody driving the truck, I was in the next seat—in the

passenger seat." (Tr. 95).

Mr. Sanchez then testified as to his previous jobs as a machine operator. (Tr. 96-99). In

these positions, Mr. Sanchez would operate machinery, assemble, and package boxes. (*Id.*). The

weight of the boxes when loaded varied; at times it ranged upward of 50-60 pounds. (Tr. 98, 100).

Mr. Sanchez was also incarcerated for a period of time; his social worker and doctor at the

prison encouraged him to apply for benefits due to his issues with HIV and arthritis. (Tr. 105).

While there, he was assigned a low bunk due to arthritis in his knees. (Tr. 100-01). He was not

permitted to work while incarcerated; rather than sitting and watching TV, Mr. Sanchez asked to

wipe tables and clean. (Tr. 101). He was unable to participate in exercise programs. (*Id.*).

Mr. Sanchez testified to seeing a Dr. Sharma to manage his HIV and arthritis. (Tr. 102).

Dr. Sharma prescribed certain medications to treat the arthritis in his knees, but Mr. Sanchez

found the medications were not always helpful. (*Id.*). According to Mr. Sanchez, Dr. Sharma did

not recommend knee surgery. (*Id.*).

The VE then testified. The findings from the prior hearing before the ALJ were reviewed;

Mr. Sanchez's prior work had been classified as landscape helper, heavy, SVP 2 (specific vocational

preparation) as actually and generally performed; production welder, medium, SVP 2 as actually

and generally performed; and hand packager, medium, SVP 2. (Tr. 109-10). The VE disagreed with

the titles assigned from the prior hearing; the VE testified he would classify Mr. Sanchez's past

work as:

4

- Machine feeder, medium, unskilled, SVP 2. (Previously hand packager).

- Landscape laborer, heavy, unskilled, SVP 2. (Previously landscape helper).

- Welding machine tender, medium, unskilled, SVP 2. (Previously production welder).

(Tr. 109-11).

The ALJ presented the following hypothetical to the VE:

> consider a person with the same age, education and past work as the claimant who can perform a full range of exertional work and that this hypothetical individual can never climb ladders, ropes and scaffolds and must avoid concentrated exposure to hazards, such as hazardous machinery and unprotected heights and also can frequently kneel and crawl.

(Tr. 112). The VE initially stated that such individual could work as a landscaping laborer but then retracted and testified the hypothetical worker could not perform any work that Mr. Sanchez had performed in the past. (*Id.*). But the individual could work as a linen room attendant, dining room attendant, or counter supply attendant, all medium, unskilled, SVP 2 jobs. (Tr. 113).

The ALJ then asked whether an individual who might be absent two or more times per month for medical reasons would be able to work. (*Id.*). The VE testified employers would not tolerate such a limitation, especially at the unskilled level. (Tr. 113-14).

The next hypothetical assumed the same restrictions as the first, but included limitations to only occasionally lifting and carrying 50 pounds and frequently lifting and carrying 25 pounds; stand and walk six hours of an eight-hour workday; and unlimited push and pull (other than as otherwise restricted for lift/carry). (Tr. 114). The VE testified the hypothetical individual could not perform Mr. Sanchez's past work, but could perform the attendant jobs previously identified. (Tr. 114-15). Again, if the individual were absent two or more times per month, those jobs would be precluded. (Tr. 115).

Finally, the ALJ presented the following hypothetical:

Consider a person with the same age, education and past work as the claimant who can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, who can stand and walk six hours of an eight-hour workday and can sit for six hours of an eight-hour workday. This individual would have unlimited push and pull, other than shown for lift and/or carry. They can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. They can occasionally stoop, kneel, crouch, and crawl and must avoid concentrated exposure to hazards, and by that, I mean hazardous machinery and unprotected heights.

(Tr. 115). The VE testified the hypothetical individual would not be able to perform Mr. Sanchez's past work as actually or generally performed and would be limited to light work. (Tr. 115-16).

## II. PERSONAL AND VOCATIONAL EVIDENCE

Mr. Sanchez born on July 21, 1953; he was therefore defined as an individual closely approaching retirement age at the time of his alleged onset date. (Tr. 119; *see also* 20 C.F.R. §§ 404.1563). Mr. Sanchez's date last insured was September 30, 2015. (Tr. 119). Mr. Sanchez did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. (Tr. 13; *see also* 20 C.F.R. § 404.1565). Given his residual functional capacity, Mr. Sanchez could no longer perform his past relevant work. (Tr. 17).

## III. RELEVANT MEDICAL EVIDENCE[2]

**HIV.** Mr. Sanchez was diagnosed with HIV in 2012. (Tr. 458, 704). Mr. Sanchez stated he contracted HIV while working at a jobsite cleaning up debris at a dialysis center. (Tr. 51, 808).

---

[2]       Mr. Sanchez only raises issues relating to his HIV+ diagnosis and the degenerative joint disease in his knees. (Pl.'s Br., ECF #15, PageID 1222-26). As such, he waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). To be eligible for DIB, a claimant must present evidence demonstrating his disability existed prior to the date last insured. *See* 42 U.S.C. § 423(c). An ALJ may refer to medical evidence from after the date last insured if it illuminates the claimant's condition, but the ALJ's decision must still be supported by contemporaneous record evidence. *Strong v. Soc. Sec. Admin.*, 88 F. App'x

After this incident, Mr. Sanchez developed a rash that spread from his left arm to his chest, and developed a fever and night sweats. (Tr. 808). Mr. Sanchez was treated for his HIV while incarcerated, and responded well to medication. (Tr. 486-503, 518, 588-615). Mr. Sanchez was prescribed Atripla to control his HIV, and reported that he tolerated the medication well and rarely missed doses. (Tr. 518). At an appointment on May 28, 2013, Bradford McGwire, M.D., Ph.D., noted that Mr. Sanchez had a viral load of 31,000 prior to starting treatment, but his viral load had decreased to 437 by that visit. (Id.). Dr. McGwire was not concerned with Mr. Sanchez's CD4 count[3] of 438 at that time. (Id.). Dr. McGwire recommended continuing with the current antiretroviral therapy with a checkup in three to four months. (Id.).

On January 19, 2016, Gerald Klyop, M.D., reviewed Mr. Sanchez's file. (Tr. 119-27). Dr. Klyop found HIV was Mr. Sanchez's only severe impairment. (Tr. 123). Dr. Klyop did not find the degenerative joint disease was severe, as an x-ray of Mr. Sanchez's left knee was normal and he was able to walk with a slow and steady gait. (Tr. 123-25). Due to his HIV+ status, Dr. Klyop recommended Mr. Sanchez avoid hazards and unprotected heights, but imposed no other restrictions. (Tr. 124-25).

---

841, 845 (6th Cir. 2004). I have summarized here the medical evidence only as to these claims, and to evidence supported by contemporaneous records.

[3] CD4 count measures certain T cells that are selectively targeted and infected by HIV. Raymund Li, Doug Duffee, Maryam F. Gbadamosi-Akindele, *CD4 Count*, National Center for Biotechnology Information (May 10, 2021) (available at https://www.ncbi.nlm.nih.gov/books/NBK470231/). A normal CD4 count range is between 500 and 1400 cells/microliters; a CD4 count of fewer than 200 cells/microliters indicates possible AIDS. *Id.* CD4 counts are monitored closely in HIV+ individuals for susceptibility to opportunistic infection or AIDS. *Id.*

On May 23, 2016, Theresa March, D.O., reviewed Mr. Sanchez's file. (Tr. 128-38). Dr. March again found HIV was Mr. Sanchez's only severe impairment. (Tr. 133). Dr. March also imposed no limitations other than avoiding hazards and unprotected heights. (Tr. 135).

**Degenerative joint disease.** On January 12, 2012, Rajesh Sharma, M.D., noted that Mr. Sanchez had been diagnosed two years earlier—approximately in 2010—with degenerative joint disease in his knees. (Tr. 448). Although Mr. Sanchez had a prescription for Percocet, he found better control of his knee pain with NSAIDs (Daypro). (Tr. 448-49).

On November 14, 2012, Mr. Sanchez was given a long-term medical restriction to a low bunk. (Tr. 750). This medical restriction was continued on December 28, 2012, and indicated Mr. Sanchez required a bottom bunk due to his arthritis. (Tr. 752). On April 29, 2015, treatment notes indicate arthritis bilaterally in Mr. Sanchez's knees. (Tr. 575). Mr. Sanchez was in pain due to his arthritis, and rated his pain as an eight out of ten. (*Id.*). Mr. Sanchez had difficulty jumping into the top bunk due to and requested a bottom bunk. (*Id.*). Two days later, on May 1, 2015, Mr. Sanchez was again ordered a long-term medical restriction for a low bunk. (Tr. 722).

When reviewing his file, neither Dr. Klyop nor Dr. March found Mr. Sanchez's degenerative joint disease a severe impairment. (Tr. 123, 135).

### THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on September 30, 2015.

2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 14, 2011 through his date last insured of September 30, 2015 (20 CFR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairment: human immunodeficiency virus (HIV) (20 CFR 404.1520(c)).

8

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can frequently kneel and crawl, but never climb ladders, ropes, or scaffolds. The claimant can engage in unlimited pushing and pulling, consistent with the lifting and/or carrying limitations. The claimant must additionally avoid concentrated exposure to hazards such as hazardous machinery and unprotected heights.

6.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on July 31, 1953 and was 62 years old, which is defined as an individual closely approaching retirement age, on the date last insured (20 CFR 404.1563).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from May 14, 2011, the alleged onset date, through September 30, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 12-19).

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an

10

accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.

2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports

the ALJ's decision, the court must overturn when an agency does not observe its own procedures

and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*,

378 F.3d 541, 546–47 (6th Cir. 2004).

STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a),

1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner

follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is

disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One

through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to

establish whether the claimant has the residual functional capacity to perform available work in

11

the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Mr. Sanchez presents a perplexing case on review. He has only filed for DIB, with a date last insured from 2015. (Tr. 119). In the years immediately preceding his date last insured, Mr. Sanchez was incarcerated. (*See* Tr. 458-805). Any medical records prior to his incarceration are minimal at best. (*See* Tr. 444-57). As a result, the objective medical evidence from the insured period is heavily supported by subjective testimony and supplemented with evidence from outside the relevant period. (*See, e.g.*, Tr. 422-29, 1100-10, 1113-15).

Mr. Sanchez first appeared before the ALJ in October 2017, and then again in April 2019. (Tr. 37-117). After the first hearing, the ALJ found Mr. Sanchez had two severe impairments: HIV+ status and degenerative joint disease in his knees. (Tr. 146). As a result, the ALJ found Mr. Sanchez had the RFC to perform light work. (Tr. 147). On review, the Appeals Council remanded this determination. (Tr. 154-57).

After conducting the second hearing, the ALJ found Mr. Sanchez's only severe impairment was his HIV+ status, and that he had the RFC to perform medium work. (Tr. 13-17). The evidence from the relevant period did not change between these two determinations, although evidence supporting Mr. Sanchez's impairments from outside the relevant period became available.

Mr. Sanchez now raises three issues before this Court: (1) the ALJ erroneously failed to find that Mr. Sanchez's degenerative joint disease of the knees was a severe impairment; (2) the ALJ erred in her credibility determination, in violation of Social Security Ruling 16-3p; and (3) the ALJ committed harmful error in failing properly to apply the grids at Step Five of the sequential evaluation process and finding Sanchez disabled prior to his date last insured. (Pl.'s Br., ECF #15, PageID 1214). I address each in turn below.

## I. The ALJ's finding that Mr. Sanchez's degenerative joint disease was not a severe impairment was not harmless error.

Mr. Sanchez asserts the ALJ's finding that the degenerative joint disease in his knees was non-severe was not supported by substantial evidence and requires remand. (Pl.'s Br., ECF #15, PageID 1222-26). The Commissioner counters that this finding was supported by substantial evidence, and to find otherwise asks this court to reweigh the evidence. (Def.'s Br., ECF # 17, PageID 1244-46). I agree, in part, with both arguments. Finding an impairment is non-severe at Step Two does not necessarily require remand if the resulting RFC properly incorporates both severe and non-severe impairments. But an RFC is not supported by substantial evidence where it does not fully incorporate the limitations imposed by both severe and non-severe impairments.

Step Two severity regulations have been construed as a *de minimis* hurdle for the claimant to clear in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Under these regulations, an impairment is determined "not severe" if it does not "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. To clear this *de minimis* hurdle, the claimant must demonstrate more than a "slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862; *see also* SSR 85-28. The severity regulation is intended only to "allow the Secretary to deny

13

benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28 (quoting *Baeder v. Heckler*, 768 F.2d 547, 553 (3d Cir. 1985)).

The Sixth Circuit has held that a "mere diagnosis of arthritis" does not meet the claimant's burden to demonstrate severity of the condition where it is unsupported by documented evidence of restricted motion or records of intensity, frequency, or duration of arthritic pain. *Higgs*, 880 F.2d at 863 (collecting cases specific to finding arthritis non-severe at Step Two). Furthermore, an ALJ's failure to find a severe impairment where one exists is harmless error where the ALJ determines the claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, Mr. Sanchez does have a diagnosis of degenerative joint disease from 2012. (Tr. 448-51). But the ALJ found the medical evidence supporting Mr. Sanchez's diagnosis of degenerative joint disease did not contain "abnormalities on physical examination to support his allegations" of arthritic pain. (Tr. 13). Based on this finding, the ALJ determined Mr. Sanchez's degenerative joint disease in the knee was a non-severe impairment. (*Id.*). However, the ALJ did find that Mr. Sanchez's HIV+ diagnosis was a severe impairment and continued through all five steps of the sequential evaluation process. (Tr. 13-19). If the analysis ended here, the failure to find Mr. Sanchez's degenerative joint disease was a severe impairment might be harmless error. In this case, it was not.

An ALJ's failure to find a severe impairment where one exists may not constitute reversible error, if the ALJ determines the claimant has at least one other severe impairment and proceeds

14

through the sequential evaluation process. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987). However, this rule is predicated on the premise that the ALJ considers both severe and non-severe limitations and their effects on the claimant to create an RFC that meaningfully considers the claimant's remaining capacity for work. *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015). The ALJ is responsible to form an RFC appropriate to the claimant's abilities, supported by the ALJ's evaluation of the medical evidence. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). An ALJ is to consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The formulation of the RFC must be based on all the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). Such evidence includes limitations resulting from other symptoms, such as pain. *Id.*

Agency regulations direct the ALJ's RFC assessment to consider the functional limitations and restrictions resulting from a claimant's medically determinable impairment or combination of impairments, including the impact of any related symptoms on the claimant's ability to do sustained work-related activities. SSR 96-8p. Only where "there is no allegation of a physical or mental limitation . . . and no information in the case record that there is such a limitation or restriction" is an ALJ directed to find no RFC limitation or restrictions. *Id.*

Mr. Sanchez raises error with the RFC based on the ALJ's analysis of the degenerative joint disease in his knees. (Pl.'s Br., ECF #15, PageID 1225) ("The ALJ erred when she failed to find that the degenerative joint disease of the knee was a severe impairment. . . . The record is unclear

15

if Sanchez's pain was considered in formulating the RFC."). Mr. Sanchez states the ALJ's finding

that Mr. Sanchez was not disabled and could perform work at the medium level of exertion fails to

build an accurate and logical bridge between the documentation in the record and result. (Pl.'s Br.,

ECF #15, PageID 1226). A district court cannot uphold an ALJ's decision, even if there "is enough

evidence in the record to support the decision, [where] the reasons given by the trier of fact do not

build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774

F. Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted).

Here, the ALJ found Mr. Sanchez's knee condition non-severe. (Tr. 13-14). But when

discussing why she found Mr. Sanchez's degenerative joint disease non-severe, the ALJ noted

"alleged arthritic pain that makes it difficult for him to stand," "decreased muscle strength of the

bilateral legs," and a medically-diagnosed need for a low bunk restriction. (*Id*.). And SSR 83-10,

discussing the exertional levels, states "[t]he considerable lifting required for the full range of

medium work usually requires frequent bending-stooping. . . . Flexibility of the knees as well as the

torso is important for this activity." However, later in the decision, the ALJ provided an RFC

based only on Mr. Sanchez's "pain and weakness secondary to HIV" and did not discuss any

limitations that might be imposed by his non-severe impairments, particularly with respect to the

knee condition. (Tr. 14-17). As such, I am unable to conclude whether the ALJ fully considered

Mr. Sanchez's severe and non-severe limitations as dictated by *Maziarz*. Therefore, I recommend

remand.

## II.     The ALJ did not err in her credibility determination.

Mr. Sanchez asserts the ALJ erred in her credibility determination in violation of SSR 16-

3p with respect to her evaluation of Mr. Sanchez's personal testimony and to the function report

16

from Mr. Sanchez's wife. (Pl.'s Br., ECF #15, PageID 1226-30). The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence. (Def.'s Br., ECF#17, PageID 1244). The Commissioner further asserts that the ALJ's credibility determination receives great weight and deference and the ALJ provided sufficient rationale for not adopting all allegations included in Mrs. Sanchez's functional report. (*Id.* at 1244-46). For the reasons discussed in Section I above, I disagree with the Commissioner's broad assertion regarding the substantial evidence supporting the RFC determination. But I do not disturb the ALJ's credibility determination and afford it the deference it is due.

An ALJ follows a two-step process for evaluating an individual's symptoms. In step one, the Commissioner determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. In step two, the Commissioner evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id.* At the second stage, the ALJ may consider evidence directly from the claimant, or gleaned from other medical and non-medical sources. *Id.*

The ALJ is not required to accept the claimant's subjective complaints, and may discount the claimant's subjective testimony when the ALJ deems it inconsistent with objective medical and other evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ need not use any "magic words," as long as it is clear from the decision as a whole why the ALJ reached a specific

conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). This Court must accord great weight and deference to the ALJ's opinion of subjective evidence, due to the ALJ's opportunity to observe a claimant's demeanor during the hearing—an opportunity this Court is not afforded in its review. *Jones*, 336 F.3d at 476. Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints and the conclusions drawn from it. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019).

Here, Mr. Sanchez asserts the ALJ failed to consider that Mr. Sanchez's testimony regarding weakness and fatigue was related to his HIV. (Pl.'s Br., ECF #15, PageID 1228). As the Commissioner points out, this is incorrect. (*See* Def.'s Br., ECF #17, PageID 1245). The ALJ included in her determination a recitation of the law regarding a claimant's symptoms and subjective statements. (Tr. 14-15). Immediately thereafter, the ALJ states: "The claimant testified to, or elsewhere alleged, an inability to work prior to the date last insured due to pain and weakness secondary to HIV." (*Id.* at 15). The ALJ ultimately incorporated this HIV-related pain and weakness testimony into the RFC assessment. (*Id.* at 17).

Next, Mr. Sanchez asserts the ALJ accorded Mrs. Sanchez's function report some weight, but disregarded Mrs. Sanchez's statement that squatting, bending, and kneeling hurt Mr. Sanchez's knees. (Pl's Br., ECF #15, PageID 1229; *see also* Tr. 17, 427). The ALJ concluded Mrs. Sanchez's opinion should receive only "some weight" because she was not a disinterested third party, nor was she an acceptable medical source. (Tr. 17). However, the ALJ found Mrs. Sanchez's report "more

18

of an account of [Mr. Sanchez's] symptoms than an assessment of his broader functional ability."
(*Id.*). Ultimately, the ALJ incorporated Mrs. Sanchez's statements that Mr. Sanchez could lift 30
pounds and walk about one mile before needing to stop and rest as support for the medium level
of exertion Mr. Sanchez could perform. (*Id.*).

The ALJ provided appropriate rationale for her treatment of Mrs. Sanchez's function
report and for Mr. Sanchez's objective testimony. I find no reversible error on this basis.

### III. The ALJ's determination of Mr. Sanchez's educational level was not supported by substantial evidence.

In his final argument, Mr. Sanchez mounts a two-pronged attack: first, that he has a
marginal education, not a limited education (as the ALJ found); and second, that he should be
limited to work at a light level of exertion. (Pl's Br., ECF #15, PageID 1230-31). With this dual
attack, he asserts either Grid Rule 203.01 or 202.01 directs a finding of disability. (*Id.* at 1231). In
response, the Commissioner asserts Mr. Sanchez's argument is "baseless." (Def.'s Br., ECF #17,
PageID 1247). The Commissioner reiterates that Mr. Sanchez retains the burden of proof at Step
Four despite his claims that it is a Step Five argument, and that Mr. Sanchez testified to having a
ninth or eleventh grade education, supporting the ALJ's finding a limited education. (*Id.* at 1246-
47). I will not re-address the ALJ's RFC determination here. I find there is some merit to Mr.
Sanchez's assertion regarding his education and its effect—in combination with the RFC—on the
ultimate determination of his disability.

The applicable regulations provide the following regarding "marginal" vs. "limited"
education levels:

(2) Marginal education. Marginal education means ability in reasoning, arithmetic,
and language skills which are needed to do simple, unskilled types of jobs. We

generally consider that formal schooling at a 6th grade level or less is a marginal education.

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. §§ 404.1564(b)(2), (3). Although these educational standards are demarcated by numerical grade levels, "the numerical grade level that [a claimant] completed in school may not represent [the claimant's] educational abilities." *Id.* at 404.1564(b). "A numerical grade level is properly used to determine a claimant's educational ability only if contradictory evidence does not exist." *Skinner v. Sec'y of Health & Hum. Servs.*, 902 F.2d 447, 450-51 (6th Cir. 1990). Evidence in support of a claimant's educational level can include past work experience, the kinds of responsibilities the claimant had when working, daily activities, or hobbies. 20 C.F.R. § 404.1564(a). Reports from educational testing may also be used as evidence. *Id.*; *see also Skinner*, 902 F.2d at 451.

While the claimant has the ultimate burden to establish an entitlement to benefits, the ALJ has the ultimate responsibility to ensure every claimant receives a full and fair hearing. *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). Social security proceedings are "inquisitorial rather than adversarial" and the ALJ is therefore charged with developing the facts. *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). There is no bright-line test to determine when the ALJ has failed to fully develop the record such that it prejudiced the claimant. *Lashley*, 708 F.2d. at 1052. But where an ALJ fails to develop the record, the ALJ is without sufficient facts to make a decision and thus the decision is not supported by substantial evidence. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (collecting cases). The

ALJ retains the duty to "weigh the evidence; to resolve material conflicts; to make independent findings of fact; and to determine the case accordingly." *Skinner*, 902 F.2d at 449. It is the limited role of this court to determine whether there is substantial evidence in the record, taken as a whole, to support the findings. *Id.* But "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks*, 531 F. App'x at 641 (cleaned up).

Here, the Commissioner points to Mr. Sanchez's hearing testimony as evidence supporting the ALJ's finding that Mr. Sanchez has a limited education. (Def.'s Br., ECF #17, PageID 1247). In response to the ALJ's question asking how far he went in school, Mr. Sanchez responds, "I went to the ninth grade or eleventh grade, *something like that*." (Tr. 107, emphasis added).

Mr. Sanchez's counsel repeatedly raised the issue of Mr. Sanchez's educational level before the ALJ. At the first hearing, his counsel asserted Mr. Sanchez had only been educated in Cuba and had no formal education in the United States; his counsel again raised the issue of Mr. Sanchez's education in a post-hearing letter. (Tr. 44, 442; *see also* Pl.'s Br., ECF 15, PageID 1231). I also note he required his wife's assistance in completing his work history report. (Tr. 369-74). He again required his wife's assistance when responding to verbal questions from agency reviewers. (Tr. 376). The limited portions of the record containing forms Mr. Sanchez completed himself contain spelling and grammatical errors; the forms themselves are bilingual English/Spanish. (*See* Tr. 374, 725, 761). Mr. Sanchez's hearing testimony, in itself, could lead to a finding that Mr. Sanchez meets a limited educational category. But there is at least some contradictory evidence questioning Mr. Sanchez's educational abilities, outside of his numerical educational attainment. Moreover, Mr. Sanchez's use of an ambiguous qualifier in response to the ALJ's question about how far he went in school—"something like that"—should have alerted the ALJ to the need for

21

further development of the extent of Mr. Sanchez's education in Cuba so that an appropriate logical bridge can be drawn.

Despite the Commissioner and Mr. Sanchez's contentions regarding his educational abilities, the ALJ has pointed the Court to no evidence in support of her finding Mr. Sanchez has a limited education. (*See* Tr. 18). In its entirety, the ALJ states in the eighth paragraph "[t]he claimant has a limited education and is able to communicate in English," cites to the regulation concerning educational level, and moves to the ninth paragraph with no discussion to support this finding. (*Id.*). As this court has recognized, "arguments crafted by defense counsel are of no consequence, as it is the opinion given by an administrative agency rather than counsel's *post hoc* rationale that is under the Court's consideration." *Muniz v. Astrue*, No. 1:11-CV-00499, 2012 WL 314094, at *7 (N.D. Ohio Feb. 1, 2012) (cleaned up). This court is unable to review whether substantial evidence supports the ALJ's finding on this issue. I therefore recommend remand for the ALJ to gather the evidence necessary in support of the determination of Mr. Sanchez's education level and explain the rationale for such determination.

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I find the Commissioner's decision denying DIB not supported by substantial evidence and recommend the decision be **REVERSED and REMANDED.**

I recommend the district court direct the ALJ to evaluate the effects of both severe and non-severe impairments when determining Mr. Sanchez's RFC, and to determine Mr. Sanchez's educational equivalency and its effect on his ability to transition to other work.

Dated: November 5, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).